UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

DWAYNE SINGLETON,

                              Plaintiff,                    **<u>MEMORANDUM & ORDER</u>**
                                                            14-CV-0303 (MKB)
              v.

JANE DOE, Housing Works Psychologist,
GLENDA BUBB, Parole Officer, and
DENISE GRANUM, Parole Officer,

                              Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Dwayne Singleton, proceeding *pro se* and currently incarcerated at Brooklyn

Detention Complex, commenced this action on January 10, 2014 against Defendants Jane Doe, a

Housing Works psychologist, and Glenda Bubb and Denise Granum, parole officers with the

New York State Division of Parole, alleging violations of his constitutional due process rights

pursuant to 42 U.S.C. § 1983. (Am. Compl. 1, Docket Entry No. 9.) Plaintiff alleges that Jane

Doe made a "false sex allegation" against him and, as a result of the false accusation, Bubb and

Granum "ordered [him] to take a sex offender program" and confiscated his cellular telephone.

(*Id.* at 4.) Plaintiff seeks one million dollars in compensatory damages and "potential earnings,"

and he seeks to have Defendants correct his parole record and return his cellular telephone.[1] (*Id.*

at 5.) Defendants move for summary judgment pursuant to Rule 56(b) of the Federal Rules of

---

[1] The Amended Complaint states that Plaintiff seeks injunctive relief "asking to have the false sex accusation removed from [his] parole and mental health records" and "requesting to have [his] cell phone back." (Am. Compl. 5.) As explained *infra*, the Court understands Plaintiff to also seek removal of his designation as a discretionary sex offender and of the special conditions imposed on his parole as a result of that designation.

Civil Procedure, arguing that the special conditions of Plaintiff's parole were reasonably related to Plaintiff's designation as a "discretionary sex offender," which designation is based on Plaintiff's conduct in prison. (Def. Mot. for Summ. J., Docket Entry No. 32; Mem. in Supp. of Mot. for Summ. J. ("Def. Mem.") 3, Docket Entry No. 34.) Defendants further argue that they are entitled to qualified immunity. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion for summary judgment. The Court grants summary judgment as to all of Plaintiff's claims for money damages and as to Plaintiff's claim for injunctive relief from the sex offender program imposed as a special condition of his parole. The Court denies summary judgment as to Plaintiff's claims for injunctive relief from his designation as a discretionary sex offender and for injunctive relief from the cellular telephone restriction imposed as a special condition of his parole.

## I. Background

Plaintiff's parole supervision began on or about August 6, 2010, when he was released from Elmira Correctional Facility. (Decl. of Glenda Bubb in Supp. of Def. Mot. for Summ. J. ("Bubb Decl.")[2] ¶ 3, Docket Entry No. 37.) Plaintiff was serving a twelve-year sentence for the criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and bail jumping in the first degree. (Dep. of Dwayne Singleton ("Singleton Dep") 29:9–20, annexed to Decl. of Mary Kim in Supp. of Mot. for Summ. J. ("Kim Decl.") as Ex. B, Docket Entry No. 42.) While imprisoned, Plaintiff was issued four "tickets," or violations, for indecent exposure and lewd acts, and a fifth ticket for touching a nurse's buttocks.

---

[2] Defendants Bubb and Granum submitted nearly identical declarations in support of their motion for summary judgment. (*See* Docket Entry Nos. 37–38.) The Court cites to Bubb's declaration, noting that the facts cited are corroborated by Granum's declaration.

(*Id.* at 34:17–21, 35:3–7.)  After a hearing regarding the violations, Plaintiff was found "guilty"

of each count of misbehavior.[3]  (*Id.*)  Defendants assert that as a result of Plaintiff's conduct in

prison, he was designated a discretionary sex offender, although based on the record before the

Court, it is unclear when, how and by whom Plaintiff was designated a discretionary sex

offender.[4]  (Def. Statement of Undisputed Facts Pursuant to Local R. 56.1 ("Def. 56.1") ¶ 5,

Docket Entry No. 35.)  According to Plaintiff, he agreed to attend a sex offender program prior

to his release on parole in August of 2010.  (Singleton Dep. 18:25–19:5.)  As a further condition

of early release, Plaintiff signed a "Certificate of Release to Parole Supervision," dated July 30,

2010, in which he agreed to "comply with all case specific sex offender conditions to be imposed

by the [parole officer]."  (*Id.* at 52:6–18; *see* Cert. of Release, annexed to Kim Decl. as Ex. C.)  It

is unclear from the record before the Court whether any case-specific sex offender conditions

were imposed on Plaintiff immediately upon his release.

        After his release, Plaintiff received court-ordered psychiatric therapy through the New

York Center for Addiction Treatment Services ("NYCATS").  (*See* Def. 56.1 ¶ 11; Am.

Compl. 4.)  On October 18, 2010, an employee of NYCATS reported to Plaintiff's parole office

---

[3]  The parties do not explain the nature of Plaintiff's hearing, before whom it was held or
whether Plaintiff was represented.

[4]  According to the New York State Parole Handbook, "[a] discretionary sex offender is
generally a person who has a history of sexual offense or pattern of inappropriate sexual
behavior, but is not subject to the Sex Offender Registry for any number of reasons.  [A parolee]
determined to be a discretionary sex offender . . . will be supervised by the Division of Parole on
an intensive basis."  *See* N.Y. State Parole Handbook,
http://www.parole.ny.gov/intro_handbook.html#h3_13 at § 3(13).

that Plaintiff had attempted to sexually touch the feet of his female therapist, sued herein as Jane Doe, during a psychiatric evaluation.[5]

On or around November 10, 2010, Plaintiff's parole supervision was transferred to the office where Bubb and Granum work as parole officers. (Bubb Decl. ¶ 7.) On December 6, 2010, Plaintiff appears to have signed a document in which he agreed to comply with a number of "special conditions of release to parole supervision for sex offenders." (*See* Letter in Compliance with Court Order Dated Sept. 8, 2016 ("Def. Ltr."), Docket Entry No. 49.) Those special conditions directed Plaintiff to "participate and fully cooperate with the directives of sex offender treatment program," (*id.* ¶ 6), and directed Plaintiff not to "purchase or possess pornography or sexually explicit materials," (*id.* ¶ 11), "purchase, possess or engage in any way, the use of any sexually explicit materials or erotic magazines, tapes, pictures, films or digital images," (*id.* ¶ 14), "purchase or possess photographic or video equipment without prior and

---

[5] Although Plaintiff attempted to locate and provide a service address for Jane Doe, he was unable to do so. (*See* Min. Entry dated Apr. 22, 2015.) In any event, because, as explained in this footnote, Plaintiff cannot bring a section 1983 claim against Jane Doe, the Court dismisses the claims against her. By decision dated July 7, 2014, the Court dismissed Plaintiff's claims against Jane Doe and gave Plaintiff leave to replead facts tending to show that Jane Doe was acting "under color of state law," pursuant to section 1983. *See Singleton v. Doe*, No. 13-CV-303, 2014 WL 3110033, at *1 (E.D.N.Y. July 7, 2014). The Amended Complaint states that Jane Doe "is a mental health worker, employed by the City/State of New York in conjunction with the New York Division of Parole and the [New York State] Department of Correctional Services." (Am. Compl. 17.) On August 27, 2014, the Court directed the New York State Attorney General to produce information as to the identity of Jane Doe. (Order dated Aug. 27, 2014, Docket Entry No. 10.) On September 9, 2014, the Attorney General's office identified Jane Doe as Joanne Garduno, a staff member at NYCATS. (Letter from N.Y. Att'y General dated Sept. 9, 2014, Docket Entry No. 12.) The Attorney General further stated that NYCATS was not an agency of the City or State of New York. (*Id.*) Plaintiff has not shown otherwise. Because Plaintiff cannot sustain a claim for relief under section 1983 against a private actor, Plaintiff's claims against Joanne Garduno are dismissed. *See Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (stating the elements of a section 1983 claim); *see also Singleton*, 2014 WL 3110033, at *2 n.3 (explaining that a private psychologist does not act under color of state law when she treats a parolee in a court-mandated therapy session).

written permission of [his] parole officer," (*id.* ¶ 22), "possess [a cellular telephone] that is video or photo-capable," (*id.* ¶ 35), or "rent, operate or be a passenger in any vehicle without the permission of [his] parole officer,"[6] (*id.* ¶ 32).

Plaintiff reported to the parole office on December 7, 2010. (Def. 56.1 ¶ 17.) During that visit, a parole officer found "pornographic photographs" on Plaintiff's cellular telephone and, consequently, confiscated the cellular telephone. (*Id.* ¶¶ 17–20; Bubb Decl. ¶ 8.) According to Plaintiff, although he knew that his parole conditions did not permit him to possess a cellular telephone with camera capability, he was simply memorializing his own consensual sexual acts with his girlfriend at the time. (Singleton Dep. 20:21–21:10; Pl. Opp'n to Mot. for Summ. J. ("Pl. Opp'n") 3, Docket Entry No. 30.) Plaintiff states that he asked Defendants on multiple occasions to return his cellular telephone so that he could sell it or dispose of it, and that Defendants assured him that they would return it but never did.[7] (Singleton Dep. 20:21–21:10; 21:17–22:12.) On December 9, 2010, Bubb and Granum reviewed Plaintiff's file and determined that, based on the report from NYCATS, "[P]laintiff's status as a discretionary sex offender [should be] continued, appropriate sex offender conditions were to be imposed, and

---

[6] In addition, Plaintiff agreed, among other things, to submit to random drug and alcohol testing, abstain from the use of all alcoholic beverages, abide by a curfew, possess only one computer or laptop and provide the password to his parole officer, travel only within the five boroughs of New York City and notify his parole officer when he established a relationship with a consenting adult. (*See generally* Def. Ltr.)

[7] According to Plaintiff, his first camera telephone was confiscated by a parole officer in the Bronx in 2010, before his case was transferred to Brooklyn and to Bubb and Granum, and his second camera telephone was confiscated by Bubb at some date thereafter. (Singleton Dep. 23–25.) Plaintiff asserts that neither telephone was returned to him. (Am. Compl. 4.)

[P]laintiff was prohibited from possessing a cellphone with a camera."[8]  (Def. 56.1 ¶ 13.)

On August 26, 2011, Bubb and Granum received a report that Plaintiff had been arrested for stealing a woman's purse while on the subway.  (*Id.* ¶ 21.)  Plaintiff was held in custody at Rikers Island until March 21, 2012, after which Plaintiff reported back to the parole office.  (*Id.* ¶ 22.)  On April 26, 2012, Bubb and Granum received a report that Plaintiff had engaged in sexually inappropriate behavior during an intake interview at a residential transition home.  (*Id.* ¶ 14.)  Granum then reviewed Plaintiff's special parole conditions and noted in Plaintiff's file that the discretionary sex offender conditions "were still appropriate."  (*Id.* ¶ 15.)  On or about May 19, 2012, Bubb and Granum learned that Plaintiff had been arrested for walking through subway cars.  (*Id.* ¶ 23.)  As a result, Bubb and Granum imposed an additional condition of parole, directing Plaintiff to "sign a contract" that prevented him from traveling by subway except when traveling to and from parole appointments, mandated programs or employment. (*Id.* ¶ 24; Singleton Dep. 19:22–25.)

## II.  Discussion

### a.  Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d

---

[8]  It is unclear from the record whether, at this time, additional sex offender conditions were imposed on Plaintiff, or whether Bubb and Granum continued Plaintiff's existing conditions, which were signed by Plaintiff on December 6, 2010.  Plaintiff alleges that as a result of Garduno's accusation, Defendants required that he attend a sex offender program and imposed on him the cellular telephone restriction at issue here.  (Am. Compl. 4.)

834, 843 (2d Cir. 2013). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

Finally, the court must "liberally construe pleadings and briefs submitted by *pro se* litigants" on a motion for summary judgment, reading such submissions "to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2008) (first citing *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000); and then citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (noting that "when a plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally" (alterations and internal quotation marks omitted)); *Ferran v. Town of Nassau*, 471 F.3d 363, 369 (2d Cir. 2006) ("This Court will construe briefs submitted by *pro se* litigants liberally.").

### b. Plaintiff's due process claims

Plaintiff alleges that as a result of Garduno's false accusation, coupled with his discretionary sex offender status, he has had to attend a sex offender program and has had his

cellular telephone confiscated.[9]  (Am. Compl. 17; Single Dep. 18–19.)  Separately, Plaintiff

argues that the special condition restricting his subway access also violates his due process

rights, but while he seeks to have the sex offender program and cellular telephone conditions

removed, he does not seek to have the subway restriction removed.  (*See* Am. Compl. 4–5, 17.)

Because the Court reads Plaintiff's pleadings, motion papers and deposition testimony "to raise

the strongest arguments they suggest," *Bertin*, 378 F.3d at 491, the Court understands Plaintiff to

argue that his due process rights were violated when he was designated a discretionary sex

offender and when, as a result of that designation, Defendants imposed on him special conditions

---

[9]  At the July 29, 2015 pre-motion conference, Plaintiff alleged for the first time that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. (See Min. Entry dated July 29, 2015.)  The Court deemed the Amended Complaint amended to include Plaintiff's Eighth Amendment claim and directed Defendants to brief the claim.  (*Id.*) Defendants argue that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law as to Plaintiff's Eighth Amendment claim.  (Def. Mem. 2 n.3.)

In order to establish a claim for cruel and unusual punishment under the Eighth Amendment, a plaintiff must satisfy two criteria: "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citations omitted); *see also Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) ("To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective.").  As to the subjective element, a plaintiff must allege facts that, if true, would establish that the defendant's actions were wanton "in light of the particular circumstances surrounding the challenged conduct."  *Wright*, 554 F.3d at 268 (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d. Cir. 1999)); *see also Crawford*, 796 F.3d at 256 ("[T]he prisoner must allege that the defendant acted with a subjectively 'sufficiently culpable state of mind.'" (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992))).  The objective component asks whether the punishment was sufficiently harmful to establish a violation "in light of contemporary standards of decency."  *Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at 8). However, because "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," only those deprivations that deny "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson*, 503 U.S. at 9 (internal quotations and citations omitted).  Here, even if Plaintiff could establish that Defendants acted wantonly, nothing in the Amended Complaint suggests that Plaintiff was deprived of "the minimal civilized measure of life's necessities."  *Hudson*, 503 U.S. at 9; *see also Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) (remanding claim of excessive force under the Eighth Amendment for consideration of whether the conduct was "objectively harmful enough or sufficiently serious to reach constitutional dimensions" (citing *Crawford*, 796 F.3d at 256)).  The Court dismisses Plaintiff's Eighth Amendment claim.

of parole that were not reasonable based on his prior conduct.[10]  (*See* Am. Compl. 17; Pl.

Opp'n 2; Singleton Dep. 19, 27.)  Defendants argue that Plaintiff fails to raise any genuine issue

of material fact as to his due process claims because (1) Plaintiff was appropriately designated a

discretionary sex offender based on his conduct while in prison, and (2) Plaintiff's special

conditions of parole were "reasonable and not arbitrary or capricious," in that they were related

to Plaintiff's conduct in prison and his status as a discretionary sex offender.  (Def. Mem. 1.)

Defendants also argue that, irrespective of Plaintiff's liberty interest, they are entitled to qualified

immunity because they acted reasonably and not in violation of a clearly established right.  (*Id.*

at 8.)  The Court addresses qualified immunity within the context of each alleged due process

violation: (1) Plaintiff's designation as a discretionary sex offender, and (2) Plaintiff's special

conditions of parole.

The Fourteenth Amendment's Due Process Clause protects persons against deprivations

of life, liberty or property without due process of law, and "those who seek to invoke its

procedural protection must establish that one of these interests is at stake."  *Victory v. Pataki*,

814 F.3d 47, 59 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Graziano v. Pataki*,

---

[10]  Based on Defendants' moving papers, Defendants appear to have construed Plaintiff's
arguments similarly.  (*See* Def. Mem. 1.)  Furthermore, in response to defense counsel's
questions, Plaintiff clarified during his deposition that he was challenging the designation.

> Q: Okay.  By the way, is that one of your claims, the fact that you
> are assessed a discretionary sex offender status by parole?
> [. . .]
> A: In a way I still had a problem with that and I still have a
> problem with it.
> Q: So is it part of your lawsuit, is that what you're claiming against
> either Officer Bubb or Supervisor Granum?
> A: The reason why I'm taking my time is because I don't
> remember writing that down specifically.  But I would say, yes.
> Q: Okay.
> A: Until this day I still believe that I shouldn't be under that.

(Singleton Dep. 36:13–37:17.)

689 F.3d 110, 114 (2d Cir. 2012).  A court first asks "whether there exists a liberty or property interest of which a person has been deprived," and if so, "whether the procedures followed by the State were constitutionally sufficient."  *Id.* (internal quotation marks omitted) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)).

Plaintiff alleges, in substance, that Defendants violated his due process rights when they imposed on him additional special conditions of parole as a result of Garduno's false accusation. (Am. Compl. 4.)  As explained above, the Court construes this as a challenge to both the extension of Plaintiff's designation as a discretionary sex offender and to the special conditions themselves, consistent with Defendants' reading of Plaintiff's papers, Plaintiff's deposition testimony, and Defendants' arguments that the special conditions of parole are reasonable mainly because of Plaintiff's designation as a discretionary sex offender.  The Court first addresses the due process challenge to Plaintiff's designation as a discretionary sex offender.

### i.    Plaintiff's designation as a discretionary sex offender

Defendants do not address whether Plaintiff was due — or whether Plaintiff received — any process before he was designated a sex offender or before Defendants "continued" his designation as a result of Garduno's accusation.  (*See id.* at 3.)  However, Defendants argue that Plaintiff was appropriately designated a sex offender based on the sexual conduct for which he received "tickets" while in prison.  (Def. Mem. 2.)

### 1.    Liberty interest

The Court is unaware of any Second Circuit federal court determination that addresses a parolee's liberty interest in being free from a *discretionary* sex offender designation.  However, federal and state courts in New York have considered a similar question of the process due to parolees who were previously convicted of sexual crimes, and who, in the years after the passage

of New York's Sex Offender Registration Act ("SORA"), were assessed a risk level and forced to comply with certain registry and notification requirements.[11] *See, e.g.*, *Doe v. Pataki* ("*Doe III*"), 3 F. Supp. 2d 456, 463 (S.D.N.Y. 1998); *People v. David W.*, 95 N.Y.2d 130, 139 (2000). In *Doe III*, for example, a district court noted that, unlike the extensive procedure afforded to incarcerated offenders before they were assessed a risk level, parolee offenders "received no advance notice of their administrative classification proceeding," and "were merely informed in writing of their risk level, the duties imposed on them by the Act, and their right to administratively appeal the agency's determination . . . in writing within 20 days." *Doe III*, 3 F. Supp. 2d at 463. Similarly, in *People v. David W.*, the New York Court of Appeals stated that "[t]he process afforded offenders . . . who were serving a sentence of probation when SORA took effect, stands in stark contrast to that provided sex offenders still in custody." *David W.*, 95 N.Y.2d at 139.

Both courts applied the "stigma plus" test, established through Supreme Court jurisprudence, that described and developed the liberty interest implicated when a person's good name and reputation are at stake. *See Doe III*, 3 F. Supp. 2d at 467; *David W.*, 95 N.Y.2d at 138. Under the "stigma plus" test, an offender who can establish both damage to reputation and the

_____

[11] SORA became effective on January 21, 1996, and requires individuals convicted of certain listed sex offenses to register with law enforcement and, in some cases, to provide the public with access to the identity and whereabouts of registrants. *See* N.Y. Correct. Law § 168 *et seq.*; *Doe v. Pataki* ("*Doe II*"), 120 F.3d 1263, 1266 (2d Cir. 1997). SORA created a five-member Board of Examiners of Sex Offenders (the "Board") to implement and administer several of its provisions and to promulgate guidelines to determine an offender's risk level. *Doe II*, 120 F.3d at 1268 (citing N.Y. Correct. Law § 168-*l*). The risk level is reviewed by a majority of the Board, and the offender is entitled to submit relevant information for the Board's review. N.Y. Correct. Law § 168-n. The assigned risk level, in turn, governs the sentence imposed by the sentencing court, and an offender who wishes to challenge the Board's recommended risk level may "appear and be heard," before the court and, if necessary, have appointed counsel. *Doe II* (citing N.Y. Correct. Law § 168-n).

alteration of "some more tangible interest such as employment" may invoke the procedural guarantees of the due process clause. *See Doe III*, 3 F. Supp. 2d at 467 (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)); *see also Crenshaw v. City of New Haven*, --- F. App'x ---, ---, 2016 WL 309658, at *2 (2d Cir. June 21, 2016) ("A protectable liberty interest may arise in connection with a 'loss of reputation' when 'coupled with some other tangible element.'" (quoting *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994))).

In *Doe III*, the Second Circuit identified the "community notification provisions" of SORA as creating reputational harm because those provisions would "likely result in [offenders] being branded as convicted sex offenders who may strike again and who therefore pose a danger to the community." *Doe III*, 3 F. Supp. 2d at 467. The court noted that "[s]uch widespread dissemination of [offenders'] information is likely to carry with it shame, humiliation, ostracism, loss of employment and decreased opportunities for employment," among other harms. *Id.* at 467–68. The court also found that the registration provisions of SORA, which subjects sex offenders to numerous requirements for a minimum of ten years and possibly for life, constituted a "tangible impairment of a right" in addition to mere harm to reputation. *Id.* at 468.

The New York Court of Appeals in *David W.* identified a similar reputational harm from "being classified and having that information disseminated," which the court deemed "a determination of status that can have a considerable adverse impact on an individual's ability to live in a community and obtain or maintain employment." *David W.*, 95 N.Y.2d at 138–39 (citing *Paul*, 424 U.S. at 703). In considering a probationer who would be subject to the most severe of SORA's registration and notification requirements, the court held that the requirements also altered the probationer's rights and, thus, triggered due process safeguards.

The decisions in *Doe III* and *David W.* are consistent with those of various federal

appellate courts holding that a liberty interest is triggered when a prisoner who has not been convicted of a sex offense is nevertheless designated, in some form, as a sex offender and forced to comply with sex offender conditions. *See Renchenski v. Williams*, 622 F.3d 315, 326 (3d Cir. 2010) (holding that "only after a prisoner has been afforded due process may sex offender conditions be imposed on an inmate who has not been convicted of a sexual offense"); *Coleman v. Dretke*, 395 F.3d 216, 223 (5th Cir. 2004) (holding that the due process clause "provides [the plaintiff] with a liberty interest from the stigma and compelled treatment on which his parole was conditioned, and the state was required to provide procedural protections before imposing such conditions"); *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (holding that an inmate designated a sex offender without having been convicted of a sex offense assumes a "label replete with inchoate stigmatization" that "requires some procedural scrutiny"); *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999) (holding that "the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause"); *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997) (holding that the stigmatizing consequences of the sex offender label coupled with a mandatory treatment program "create the kind of deprivations of liberty that require procedural protections"); *see also In re Gordon*, 16 N.Y.S.3d 371, 375 (N.Y. Sup. Ct. 2015) (denying a plaintiff habeas corpus relief but acknowledging that the plaintiff may have a liberty interest in being heard on his designation as a discretionary sex offender).

Here, the Court cannot determine whether Plaintiff's designation as a discretionary sex offender "create[s] the kind of deprivations of liberty that require procedural protections" because Defendants have not presented sufficient evidence regarding the nature of the designation and, thus, the harm to Plaintiff. *See Neil*, 131 F.3d at 831. The New York Parole

Handbook defines a "discretionary sex offender" as "a person who has a history of sexual offense or pattern of inappropriate sexual behavior, but is not subject to the Sex Offender Registry for any number of reasons." N.Y. Parole Handbook § 3.13. "If [a person] is determined to be a discretionary sex offender, [he] will be supervised by the Division of Parole on an intensive basis."[12] *Id.* Thus, Plaintiff, unlike the parolees in *Doe III* and *David W.*, was not required to register on the New York Sex Offender Registry, but he was subject to "intensive supervision." *Id.*; *cf. Valmonte*, 18 F.3d at 1000 (holding that even where the plaintiff's registration on a list of child abusers was not automatically disclosed to potential employers, it

---

[12] Although Defendants have not provided the Court with the guidelines pursuant to which Plaintiff was designated a discretionary sex offender, the court in *In re Gordon* noted that discretionary sex offenders are designated pursuant to a directive of the Department of Corrections and Community Supervision ("DOCCS") that sets forth a departmental policy "to identify and provide intensive supervision strategies to both individuals subject to the New York State Sex Offender Registry and to individuals with a history of sexually inappropriate behaviors so that the interests of public safety and the supervision needs of the releases are served," ("Directive 8304"). *In re Gordon*, 16 N.Y.S.3d 371, 373 (N.Y. Sup. Ct. 2015) (quoting DOCCS Directive 8304(II)). The Court is unable to locate Directive 8304, which does not appear to be available at the DOCCS website or in other electronic form despite references to its continued use. Under Directive 8304, a discretionary sex offender is defined as "an offender found upon case review determination by the Bureau Chief to meet Department[-]established criteria for specialized supervision as a sex offender." *In re Gordon*, 16 N.Y.S.3d at 373 (quoting Directive 8304(IV)(A)). The designation may apply to persons who demonstrate:

> 1. Current or prior crime of conviction/adjudication is a sexually motivated offense, but not a NYS Registry sex offense conviction . . . or
>
> 4. History of a documented ***pattern*** of sexual misbehaviors (i.e., crimes with a sexual component not incorporated into a final conviction; school records; jail or prison disciplinary records; or sexually inappropriate behaviors admitted to by the offender); and
>
> 5. It appears that the offender and/or community would benefit from intensive supervision practices that incorporate specialized sex offender containment' strategies."

*Id.* at 374 (quoting Directive 8304(IV)(A)). Furthermore, that court noted that "nothing in the [D]irective mandat[es] the application of any specific parole conditions to discretionary sex offenders." *Id.*

satisfied the "stigma" part of the "stigma plus" test because potential employers could access the information). At his deposition, Plaintiff described an experience akin to "being branded as [a] convicted sex offender[]," *see Doe III*, 3 F. Supp. 2d at 467, and being subjected to the same special conditions of parole as registered sex offenders — conditions that suggest to Plaintiff's community that he is, in fact, a convicted sex offender:[13]

> I suffered a lot. Mentally, I suffered a lot. At one point I wanted to kill myself on parole. Parole Officer Bubb could vouch for that when I went into that treatment, Brooklyn Long Island Technical Hospital, whatever it was. So, yeah, I was really messed up over that, really distraught . . . . When I got open and I explained certain things to females, they don't want nobody like that. Tickets for lewd exposure, they might understand that . . . . I want to say that my life was forever messed up . . . . And let me say one more thing, in [sexual offender program] they're not trying to hear anything about you guilty or not. They don't care, they just label you that. Even if I bring that up they'll probably kick me out . . . . They say you lack empathy for the victim and that's the reason why they removed me. So I'm stuck with that tag no matter how much I contest it anywhere for the rest of my life.

(Singleton Dep. 54–57.) Defendants have not provided any evidence regarding the mandatory or permissive requirements that stem from a discretionary sex offender designation, including whether and where the information of Defendant's designation is maintained and to whom it is available. Without such information, the Court cannot identify the scope of the reputational harm that attaches to Plaintiff's designation.

Furthermore, based on the record before the Court, it is unclear whether the designation places a "tangible burden" on Plaintiff. The courts in *Doe III* and *David W.* focused on the combined burden of repeated registration requirements and the possible loss of employment

---

[13] Indeed, Plaintiff himself appears to struggle with distinguishing his designation from that of a registered sex offender and references the inescapable stigma associated with the public understanding of sex offenders. (*See, e.g.*, Singleton Dep. 21: 20–22 ("I'm not a sex offender, you know, even though I have to go to the program.").)

opportunity, for example, as a result of employer access to registration databases. *See, e.g.*, *Doe III*, 3 F. Supp. 2d at 468 (discussing registration requirements, which "obviously encroach on the liberty of convicted sex offenders, and, therefore, [cause them to] suffer a tangible impairment of a right in addition to mere harm to reputation"); *David W.*, 95 N.Y.2d at 137–38 ("This Court has held that the mere likelihood of dissemination to prospective employers of allegations of rape and abuse in a fired public employee's personnel file sufficiently impaired that employee's liberty interest to warrant due process protections. . . . [W]e are persuaded that [the sex offender designation] implicated [the] defendant's liberty interest and triggered due process safeguards.").

The record before the Court does not address whether Plaintiff's designation imposes any particular restrictions or burdens on him. Plaintiff is clearly subject to over thirty-five special conditions, (*see generally* Def. Ltr.), concededly as a result of being designated a discretionary sex offender and not merely because of his lewd conduct while in prison, (*see* Def. Mem. 3–4, 7). The special conditions of parole that Plaintiff signed on December 6, 2010, are in fact expressly titled "Special Conditions of Release to Parole Supervisions for Sex Offenders," and appear to include, with few exceptions, the very conditions imposed against registered sex offenders.[14] However, it is not clear to the Court whether certain — or, indeed, any — special conditions of parole *must* be imposed as a result of the designation, or whether a parolee might be designated a discretionary sex offender with no special conditions of parole imposed as a result.

---

[14] The only special conditions to which Plaintiff was not subject are: registering as a sex offender with local law enforcement; complying with all requirements of SORA, if applicable; making and keeping an appointment for sex offender treatment assessment; and four conditions relating to contact with minors. (*See* Def Ltr. ¶¶ 2–3, 5, 15, 18–20.)

In the absence of evidence from Defendants regarding the effects or permanence of the designation, the Court cannot determine whether Plaintiff meets the "stigma plus" test and was entitled to process before he was designated a discretionary sex offender. *See Crenshaw*, --- F. App'x at ---, 2016 WL 309658, at *2 ("A protectable liberty interest may arise in connection with a 'loss of reputation' when 'coupled with some other tangible element.'" (quoting *Valmonte*, 18 F.3d at 999)). Construing the evidence in the light most favorable to Plaintiff, Defendants have not met their burden to prove that "there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *Davis*, 821 F.3d at 243. The Court next assesses whether Defendants are entitled to qualified immunity on Plaintiff's claim regarding his designation as a discretionary sex offender.

### 2.  Qualified immunity

Qualified immunity protects public officials from liability for civil damages "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. ---, ---, 135 S. Ct. 2042, 2044 (2015); *see also Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor*, 575 U.S. at ---, 135 S. Ct. at 2044; *see also Garcia*, 779 F.3d at 92 (noting that the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). "When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Taylor*, 575 U.S. at ---, 135 S. Ct. at 2044 (alterations omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. ---, ---, 131 S. Ct. 2074, 2085 (2011)). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly

established," *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004), and while there need not be "a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate," *Taylor*, 575 U.S. at ---, 135 S. Ct. at 2044 (quoting *Ashcroft*, 563 U.S. at ---, 131 S. Ct. at 2083).

As explained above, although a prisoner or parolee has a liberty interest in avoiding the stigma and tangible impairment associated with a registered sex offender designation, neither the Second Circuit nor the Supreme Court has made clear that the interest extends to a discretionary sex offender designation. Thus, Plaintiff's right to receive due process prior to being designated a discretionary sex offender is not clearly established, and to the extent that Plaintiff had such an interest upon which Defendants wrongly infringed, Plaintiff cannot recover money damages from Defendants because they are entitled to qualified immunity. *See Taylor*, 575 U.S. at ---, 135 S. Ct. at 2044; *see also Allen v. Coughlin*, 64 F.3d 77, 81 (2d Cir. 1995) (holding that prison officials were entitled to qualified immunity in the context of a prisoner's due process claims where the New York Appellate Division had upheld a somewhat contrary rule to the rule set forth by the Second Circuit).

Nevertheless, qualified immunity does not bar declaratory and injunctive relief. *See Allen*, 64 F.3d at 81 (noting that qualified immunity was not grounds for dismissing all of the plaintiff's claims because the doctrine "does not bar declaratory and injunctive relief," which the plaintiff had requested (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))); *Giacalone v. Abrams*, 850 F.2d 79, 84 (2d Cir. 1988) ("When a plaintiff seeks both damages and equitable relief, successful assertion of qualified immunity frees an official only from the burden of defending against personal liability for damages. The official must still participate in the ongoing suit to litigate the remaining equitable claims."). Here, the Court understands Plaintiff to seek

removal of his designation as a discretionary sex offender, which relief is not barred by Defendants' qualified immunity. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's claim seeking money damages from his designation as a discretionary sex offender, and denies Defendants' motion for summary judgment as to Plaintiff's claim seeking injunctive relief from the same.

### ii. Plaintiff's special conditions of parole

Defendants seek summary judgment as to Plaintiff's challenge to the special conditions of parole imposed on him. Defendants argue that the special conditions of the cellular telephone restriction and the sex offender program were reasonably related to Plaintiff's designation as a "discretionary sex offender," based on his conduct in prison, and that the special condition of the restriction on Plaintiff's subway access was reasonably related to Plaintiff's arrest on the subway.

### 1. Liberty interest

Although the liberty rights of parolees have not been well-defined, it is clear that "[p]arolees are, of course, not without constitutional rights." *United States ex rel Sperling v. Fitzpatrick*, 426 F.2d 1161, 1164 (2d Cir. 1970). However, parolees are subject to "restrictions not applicable to other citizens," and a prisoner on parole enjoys only "conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *United States v. Polito*, 583 F.2d 48, 54 (2d Cir. 1978) ("While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom . . . ." (internal quotation marks omitted) (quoting *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)); *Gerena v. Pezdek*, No. 13-CV-953, 2015 WL 513145, at *3 (N.D.N.Y. Feb. 6, 2015) ("Probationers and parolees, simply by virtue of their

status . . . enjoy only a conditional liberty dependent on their adherence to special probation restrictions."); *Daniels v. Ralph*, No. 10-CV-884, 2012 WL 2120591, at *8 (W.D.N.Y. June 11, 2012) (noting that "[t]he conditional liberty enjoyed by the parolee is dependent on observance of special parole restrictions" (internal quotation marks and citations removed)); *LoFranco v. U.S. Parole Comm'n*, 986 F. Supp. 796, 804 (S.D.N.Y. 1996) ("As a condition of release on parole, however, the Parole Commission may restrict a parolee's access to otherwise lawful activities."); *Rizzo v. Terenzi*, 619 F. Supp. 1186, 1190–91 (E.D.N.Y. 1985) ("The parolee released from confinement has been granted but conditional liberty, and his liberty interest is defined by the terms of his release."); *see also* N.Y. Comp. Codes. R. & Regs. tit. 9, § 8003.3 ("A special condition may be imposed upon a [parolee] either prior or subsequent to release . . . each special condition may be imposed by a member of the Board of Parole, an authorized representative of the division of parole, or a parole officer," memorialized by "a written copy of each special condition imposed.").

The Supreme Court has held that parole revocations implicate a parolee's due process interests, *Morissey v. Brewer*, 408 U.S. 471, 480 (1972), and more recently, the Second Circuit has suggested that a parolee may have a due process claim where special conditions of his parole are impermissibly vague, *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006). The Second Circuit has also identified parolees to occupy the highest end of a "continuum" of liberty interests afforded to prisoners. *Victory*, 814 F.3d at 60. Thus, "parolees are entitled to some form of due process in the imposition of special conditions of parole." *Pollard v. United States Parole Comm'n*, No. 15-CV-9131, 2016 WL 3167229, at *3–4 (S.D.N.Y. June 6, 2016). The view that some due process rights attach to special conditions of parole finds support in the

related field of conditions of supervised release, to which due process protections also apply.[15]

*See, e.g.*, *United States v. Green*, 618 F.3d 120, 122 (2d Cir. 2010); *United States v. Pablo Hernandez*, --- F. Supp. 3d ---, ---, 2016 WL 5107017, at *2 (E.D.N.Y. Sept. 20, 2016) ("To be valid, a supervised release restriction must be 'reasonably related' to the sentencing objectives of 18 U.S.C. § 3553(a).  It must be 'designed, in light of the crime committed, to promote the defendant's rehabilitation and to insure the protection of the public.'" (alteration omitted) (quoting *United States v. Reeves*, 591 F.3d 77, 82–83 (2d Cir. 2010))); *see also Reeves*, 591 F.3d at 82–83 (holding unconstitutionally vague conditions requiring that a defendant convicted for possession of child pornography notify probation department when entering into a significant romantic relationship and notify his partner of his conviction); *United States v. Bello*, 310 F.3d 56, 62 (2d Cir. 2002) (holding that bar on watching television was an impermissible condition of supervised release); *United States v. Loy*, 237 F.3d 251, 270 (3d Cir. 2001) (remanding for clarification a condition that restricted a defendant's access to all forms of pornography where the defendant was convicted of possessing child pornography).

    To the extent that a parolee's special conditions may implicate his liberty interests, those

---

[15]  Several courts in this Circuit have held that "[a] parolee has no constitutionally protected interest in being free of a special condition of parole."  *Boddie v. Chung*, No. 09-CV-4789, 2011 WL 1697965, at *1 (E.D.N.Y. May 4, 2011) (citing *Cooper v. Dennison*, No. 08-CV-6238, 2011 WL 1118685, at *11 (W.D.N.Y. Mar. 24, 2011)); *see, e.g.*, *McCloud v. Kane*, 491 F. Supp. 2d 312, 317 (E.D.N.Y. 2007) (same); *Maldonado v. Fischer*, No. 11-CV-1091, 2012 WL 4461647, at *4 (W.D.N.Y. Sept. 24, 2012) ("Accordingly, to the extent that plaintiff is alleging a protected liberty interest to be free from the special conditions of parole to which he objects, such an 'interest' is not protected."); *Robinson v. Pagan*, No. 05 CV-1840, 2006 WL 3626930, at *6 (S.D.N.Y. Dec. 12, 2006) ("It is well within the Division of Parole's discretion to impose supervision conditions that the parolee deems onerous."); *Walker v. Mattingly*, No. 09-CV-845, 2012 WL 1160772, at *6 (W.D.N.Y. Apr. 5, 2012) (noting that parolees do not have a protected liberty interest to be free from special conditions of parole). Here, the Court understands Plaintiff to challenge the substance of his special conditions, and not the mere imposition of those conditions.

liberty interests are not infringed "in the absence of a showing that the [parole] board or its agents acted in an arbitrary and capricious manner." *Boddie*, 2011 WL 1697965, at *2 (citing *Pagan*, 2006 WL 3626930, at *1); *see also Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972) ("[W]hen a convict is conditionally released on parole, the Government retains a substantial interest in insuring that its rehabilitative goal is not frustrated and that the public is protected from further criminal acts by the parolee. Although a parolee should enjoy greater freedom in many respects than a prisoner, we see no reason why the Government may not impose restrictions on the rights of the parolee that are reasonably and necessarily related to the interests that the Government retains after his conditional release."); *Muhammad v. Evans*, No. 11-CV-2113, 2014 WL 4232496, at *9 (S.D.N.Y. Aug. 15, 2014) ("In the Second Circuit, special restrictions on a parolee's rights are upheld where they are reasonably and necessarily related to the interests that the Government retains after his conditional release." (internal quotation marks and citations omitted)); *Singleton*, 2014 WL 3110033 at *3 ("[T]he imposition of conditions — whether imposed prior to or subsequent to release, by the parole board or a field parole officer — must be upheld as long as they are reasonably related to a parolee's past conduct, are not arbitrary and capricious, and are designed to deter recidivism and prevent further offenses." (quoting *Robinson v. New York*, No. 09-CV-0455, 2010 U.S. Dist. LEXIS 144553, at *14 (N.D.N.Y. Mar. 26, 2010)); *Walker*, 2012 WL 1160772, at *18 ("[T]he Parole Board's discretionary imposition of special conditions is not subject to judicial review in the absence of a showing that the board or its agents acted in an arbitrary and capricious manner."); *Maldonado*, 2012 WL 4461647, at *3 (same); *Pena*, 2002 WL 31886175, at *9 (same).

Therefore, as a parolee, Plaintiff has a limited due process right that entitles him to conditions of parole that are reasonably related to his prior conduct or to the government's interest in his rehabilitation.

## 2. Qualified immunity

Although parolees are entitled to certain limited due process rights in the conditions of their parole, those due process rights are not clearly defined. As with Plaintiff's claim regarding his discretionary sex offender designation, Plaintiff cannot recover money damages from Defendants for the special conditions that were imposed on him because neither the Supreme Court nor the Second Circuit has clearly established the process that is due to a discretionary sex offender before he is subject to certain special conditions of parole. *See Taylor*, 575 U.S. at ---, 135 S. Ct. at 2044; *see also Allen v. Coughlin*, 64 F.3d 77, 81 (2d Cir. 1995) (holding that prison officials were entitled to qualified immunity in the context of a prisoner's due process claims where the New York Appellate Division had upheld a somewhat contrary rule to the rule set forth by the Second Circuit).

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's claims seeking money damages from the imposition of special conditions, including the restriction to Plaintiff's subway access. The Court denies Defendants' qualified immunity challenge to Plaintiff's claims seeking injunctive relief from the special conditions of his parole — namely, the sex offender program and cellular telephone restriction.[16] *See Giacalone*, 850 F.2d at 84 ("[S]uccessful assertion of qualified immunity frees an official only from the burden

---

[16] Plaintiff specifies in the Amended Complaint that, as to the special conditions of his parole, he is seeking injunctive relief from the confiscation of his cellular telephone and the sex offender program. Plaintiff makes no mention of lifting the subway restriction. (*See* Am. Compl. 5.)

of defending against personal liability for damages.").

### 3. Due process

As to the sex offender program imposed as a condition of Plaintiff's parole, Defendants argue that they are entitled to summary judgment, principally because Plaintiff "agreed to attend" the program prior to being released and because the program was reasonably related both to Plaintiff's designation as a discretionary sex offender and to Plaintiff's conduct while in prison. (Def. Mem. 3, 7–8.) As to the cellular telephone restriction imposed as a condition of Plaintiff's parole, Defendants argue that because Plaintiff "[i]s a discretionary sex offender, [he] was not allowed to possess" a cellular telephone with camera capabilities, and that Plaintiff "knew he wasn't allowed to possess" such a cellular telephone. (*Id*. at 4, 8.)

The Court agrees with Defendants that Plaintiff's conditions of parole reasonably relate to his designation as a discretionary sex offender. (*See id*. at 2–4.) Pursuant to Plaintiff's designation as a discretionary sex offender, he was required to comply with certain intensive conditions of parole, (*see id*. at 4), and the sexual offender program and cellular telephone restrictions are reasonably related to a designation predicated on "a pattern of inappropriate sexual behavior," N.Y. Parole Handbook § 3.13. However, in view of the Court's denial of summary judgment as to Plaintiff's designation as a discretionary sex offender, the challenged conditions must also be reasonably related to Plaintiff's past conduct. As the Court has previously stated, the relevant inquiry is whether the special conditions of the sex offender program and cellular telephone restriction are "reasonably related to [Plaintiff's] past conduct, are not arbitrary and capricious, and are designed to deter recidivism and prevent further offenses," *Singleton*, 2014 WL 3110033 at *3 (citation omitted) — not whether Plaintiff admitted that he was aware of the special conditions or knowingly violated them.

## A.  Sex offender program

While in prison, Plaintiff was found to have engaged in lewd conduct on four occasions and touched a nurse's buttocks on one occasion.  (Singleton Dep. 33:15–34:21; Def. Mem. 2.) The Court concludes that requiring Plaintiff to attend a sex offender program, ostensibly designed for his rehabilitation and to prevent recidivism, is reasonably related to Plaintiff's propensity to commit lewd acts and could conceivably deter him from committing future lewd acts.[17]  *See Birzon*, 469 F.2d at 1243 (holding that the government may restrict parolees' rights in ways that are "reasonably and necessarily related to the interests that the Government retains after his conditional release").  Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's claim requesting injunctive relief from the special condition of the sex offender program.

## B.  Cellular telephone restriction

The restriction on Plaintiff's ability to possess a cellular telephone with camera capability reads: "I will not own or possess a beeper, scanner or cell phone without permission of my parole officer.  If given permission to possess a cell phone, I will not possess one that is video or photo-capable."  (Def. Ltr. ¶ 35.)  The restriction appears ordinary among other, similar restrictions on Plaintiff's ability to "purchase or possess pornography or any sexually explicit materials," (*id.* ¶ 11), "engage or participate in any online computer service that involves the exchange of electronic messages or establishes sexual encounters or liaisons," (*id*. ¶ 12), "call or

---

[17]  Regarding the sex offender program, Plaintiff stated at his deposition:
> Okay, also, you know, I was ordered to take the SOP program, sex offender program.  I was originally ordered to take that program specifically not because I have a sex case.  Because I caught tickets upstate in prison for indecent exposure.

(Singleton Dep. 18:25–19:5.)

view sexually explicit telephone, movies or television services," (*id*. ¶ 13), and "purchase or possess photographic or video equipment without prior and written permission of [a] parole officer," (*id*. ¶ 22).  Alongside the many restrictions on Plaintiff's ability to create or possess pornographic material or own consumer items that could enable him to create or possess such material, the restriction on Plaintiff's possession of a cellular telephone with camera capability appears to be a restriction placed on sex offenders more generally.  (*See* Def. Mem. 4.)  As the Second Circuit noted in *United States v. Sofsky*:

> We appreciate the Government's point that permitting [the defendant] access to a computer and the Internet after serving his ten-year sentence can facilitate continuation of his electronic receipt of child pornography, but we are more persuaded by the observation in *Peterson* that "although a defendant might use the telephone to commit fraud, this would not justify a condition of probation that includes an absolute bar on the use of telephones." The same could be sad of a prohibition on the use of the mails imposed on a defendant convicted of mail fraud. . . .

287 F.3d 122, 126 (2d Cir. 2002) (quoting *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001)).  Although *Sofsky* concerned federal conditions of probation subject to slightly more stringent standards than state conditions of parole, the court's reasoning applies here, where the cellular telephone restriction functions as an overbroad ban on an item simply because Plaintiff could use its functions to commit a future lewd act.

More significantly, Defendants have not provided the Court with evidence that the cellular telephone restriction was related to Plaintiff's prior conduct; rather, Defendants merely argue that Plaintiff was not permitted to possess a cellular telephone with camera capability because he was designated a discretionary sex offender.  (Def. Mem. 4, 8.)  Because there is no evidence before the Court that the cellular telephone restriction relates to Plaintiff's prior conduct, the Court denies Defendants' motion for summary judgment as to Plaintiff's claim seeking injunctive relief from the cellular telephone restriction.

### III.  Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for summary judgment.  The Court grants summary judgment as to all of Plaintiff's claims for money damages and as to Plaintiff's claim for injunctive relief from the sex offender program imposed as a special condition of his parole.  The Court denies summary judgment as to Plaintiff's claims for injunctive relief from his designation as a discretionary sex offender and for injunctive relief from the cellular telephone restriction imposed as a special condition of his parole.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  September 28, 2016
        Brooklyn, New York